RENDERED: JULY 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0130-MR

JAMES M. AUBREY                                                    APPELLANT

v.          APPEAL FROM HARDIN CIRCUIT COURT
        HONORABLE KELLY MARK EASTON, JUDGE
        ACTION NO. 19-CR-00384

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  James M. Aubrey ("Aubrey") appeals as a matter of right

from his convictions for disorderly conduct in the second degree, tampering with

physical evidence, and being a persistent felony offender in the second degree.

Upon review, we affirm.

In the early morning hours of February 9, 2019, law enforcement

officers responded to a 911 call from Patricia Bivens, an employee of the Huddle

House restaurant in Radcliff, Kentucky. Bivens reported that she had observed Aubrey step out of his vehicle in the middle of the Huddle House parking lot and retrieve what she believed to be a gun from the trunk of the vehicle. Upon witnessing Aubrey retrieve the weapon and begin to walk toward the door of the restaurant, Bivens and a fellow Huddle House employee barricaded themselves in a walk-in freezer in the back of the restaurant. Bivens testified that while she was in the freezer, she could hear an individual whom she believed to be Aubrey moving around the restaurant and toward the door of the freezer. Eventually, Aubrey physically struck the freezer door and shouted to Bivens and her co-worker that "whoever was trying to rob [them] was gone." A recording of both the 911 call and security camera footage from the restaurant were played for the jury at trial and corroborated Bivens' testimony.

Officer James Martin of the Radcliff Police Department testified that he arrived at the Huddle House just after 4:30 a.m. in response to a 911 call reporting a man with a gun inside the restaurant. As the first law enforcement officer on the scene, Officer Martin testified that he observed Aubrey pacing from one side of the restaurant to the other and described Aubrey as being in a "mode of panic." Officer Martin, along with officers from the Hardin County Sherriff's Department, converged around the building. Aubrey was ultimately taken into custody by other officers.

Once Aubrey was in custody, Officer Martin asked him where the gun was, to which Aubrey initially replied that he did not have a gun. When Officer Martin repeated the question, Aubrey responded that he did have a gun, but that it was an airsoft gun.[1] When Aubrey made reference to the airsoft gun that was in his possession when he entered the restaurant, he pointed in the direction of a restaurant seating booth directly behind him. Officer Martin testified that an airsoft pistol was ultimately recovered by other officers between a wall and a booth of the restaurant. A recording of Officer Martin's body camera footage was played at trial and corroborated the testimony he provided.

Aubrey was charged with disorderly conduct in the second degree, tampering with physical evidence, and being a persistent felony offender in the second degree. Following a jury trial, he was found guilty of all three offenses and ultimately sentenced to a total of seven years' imprisonment.

Aubrey moved for a directed verdict of acquittal on the charge of tampering with physical evidence both at the close of the prosecution's case and at the conclusion of all the evidence. The circuit court denied both motions. On appeal, Aubrey argues that the circuit court erred in denying his motions for a

---

[1] An airsoft gun is a weapon that uses compressed air to fire what is typically a plastic BB. Airsoft weapons are often manufactured with a bright orange tip to signify that they are in fact replicas and not real guns. However, the orange tip of the airsoft pistol that Aubrey brought into the Huddle House restaurant had been painted black.

directed verdict because the Commonwealth provided insufficient evidence of guilt that he tampered with physical evidence. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Viewing the evidence in the light most favorable to the Commonwealth, a trial court must deny a motion for directed verdict when there is "evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id*. at 187-88.

Kentucky Revised Statutes (KRS) 524.100 states in relevant part:

(1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:

(a) Destroys, mutilates, *conceals*, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]

. . .

(2) Tampering with physical evidence is a Class D felony.

-4-

(Emphasis added.) The jury was specifically instructed as to the act of concealment of the airsoft pistol with the intent to impair its availability in an official proceeding. The evidence presented by the Commonwealth established that Aubrey got out of his car and secured what appeared to be a real pistol from the trunk, approached the restaurant clearly brandishing an apparent weapon, entered the restaurant with the airsoft pistol, and disposed of the pistol in a booth at the restaurant before police arrived on the scene.

Aubrey argues that the circuit court erred in light of the holdings in *Commonwealth v. James*, 586 S.W.3d 717 (Ky. 2019); and *McGuire v. Commonwealth*, 595 S.W.3d 90 (Ky. 2019). We disagree. In *McGuire*, the specific issue was whether the defendant "concealed" or "removed" methamphetamine "when he tossed it from his flight path while being pursued by [the officer]." 595 S.W.3d at 98-99. The Kentucky Supreme Court held as follows:

> In *Commonwealth v. James*, we noted that KRS 524.100 was based on Section 241.7 of the Model Penal Code, and that twenty-eight other jurisdictions have enacted tampering statutes based on this model provision. In keeping with the courts of those jurisdictions, we adopted a widely-recognized interpretation of our tampering statute that *applies to a narrow set of circumstances*: "'where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant *and in the presence and view of the police*, this conduct does not constitute' tampering by either concealment or removal that will support an evidence-tampering charge."

*Id.* at 99 (footnotes omitted) (emphasis added). In denying Aubrey's motion for a directed verdict at the close of all the evidence, the circuit court distinguished the holdings in *McGuire* and *James*. We agree that those cases are inapplicable to the facts in the present case.

Here, there was no evidence to suggest that Aubrey placed the airsoft gun in the booth *while in the presence* of a police officer. To the contrary, the evidence presented was that Aubrey had attempted to hide the gun in the booth of the restaurant *before* the officers arrived. *See Crayton v. Commonwealth*, No. 2013-SC-000266-MR, 2014 WL 2811316, at *4-5 (Ky. Jun. 19, 2014) (upholding a tampering conviction where the defendant, while outside the presence of police officers, threw a gun into another part of the backyard in which he was found hiding). Indeed, it was only after the officers asked Aubrey where the gun was that they recovered the gun between the restaurant booth and the wall.

The testimony of both Bivens and Officer Martin, together with the recording of Bivens' 911 call, Officer Martin's body camera footage, and security camera footage from the Huddle House restaurant, satisfy the concealment element of tampering with physical evidence. It was not clearly unreasonable for the jury to find guilt on the tampering charge. We conclude the Commonwealth produced evidence regarding the concealment element of the tampering with physical evidence charge, which "was considerably more than a mere scintilla and the case

-6-

was properly presented to the jury for determination." *Benham*, 816 S.W.2d at 188.  Accordingly, the circuit court did not err in denying Aubrey's motions for a directed verdict.

Aubrey next argues that the charge of being a persistent felony offender in the second degree should be reversed and dismissed with prejudice. However, this argument is moot in light of the circuit court's properly denying Aubrey's motions for a directed verdict.

For the foregoing reasons, we affirm the judgment of the Hardin Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

G. William Bailey, Jr.
Brian Clear
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Leilani K. M. Martin
Assistant Attorney General
Frankfort, Kentucky